ST. LOUIS S. W. RY. CO. et al. v. JACKSON.

(Circuit Court of Appeals, Eighth Circuit. June 19, 1899.)

No. 1,084.

1. APPEAL—NECESSARY PARTIES.

Receivers in a suit to foreclose a railroad mortgage, who had been finally discharged prior to the filing of an intervening petition to establish a judgment recovered against them as a claim against a fund reserved by the court after sale of the road to cover such claims, and who were not made parties to the petition, are not necessary parties on an appeal from the decree entered thereon.

2. FORECLOSURE OF RAILROAD MORTGAGE — SALE SUBJECT TO CLAIMS AGAINST RECEIVER—CONSTRUCTION OF DECREE.

Where a circuit court, in its decree for the sale of railroad property in a foreclosure suit, reserved the right to subject the property to the payment of claims which might be established against the receivers, but, in its order confirming the sale, required the purchaser to pay into court an additional sum to meet such claims, and provided that "the payment of such sum shall not affect the liability of the road or the purchaser for any other or greater sum or sums for which the receivership or railroad may be liable under the orders of this court or the decree for the sale of said road," the payment into court of the sum required by such order operated to discharge the road from liens, and the purchaser from liability, pro tanto, and to transfer the lien of claims, to that extent, to the fund in court; and the loss of the fund, or a portion of it, by the failure of the bank which was the depositary of the court, did not revive such liens against the road, or the liability of the purchaser.

**3. SAME.**

 In a decree entered upon a petition of intervention subsequently filed in such case by one who had obtained a judgment against the receivers, a finding that the petitioner's claim "is a lien on said mortgaged premises so purchased" at the sale, followed by an order for its payment from the fund in court, was merely matter of inducement to the order for payment, and not an adjudication that the lien on the property still continued.

 Sanborn, Circuit Judge, dissenting.

## Appeal from the Circuit Court of the United States for the Eastern District of Arkansas.

 In the year 1889 the Central Trust Company of New York instituted a suit in the circuit court of the United States for the Western division of the Eastern district of Arkansas against the St. Louis, Arkansas & Texas Railway Company in Arkansas and Missouri, for the foreclosure of a mortgage executed by the railway company. This suit was subsequently consolidated with one instituted in the same court by the Mercantile Trust Company against the same railway company for the purpose of foreclosing another mortgage. This consolidated suit will hereafter be referred to as the "principal case." In its early progress, S. W. Fordyce and A. H. Swanson were appointed receivers to operate the railroad of the defendant company pending the litigation. By order of January 31, 1890, duly made in the case, all valid claims for injuries to persons occasioned by negligence of the receivers while operating the road were made liens upon the railroad property superior and paramount to the liens of the mortgages. By the provisions of the decree of foreclosure entered July 15, 1890, the liens of the mortgages were made inferior to such claims for personal injuries; a minimum bid for the property was fixed; $75,000 was required to be paid to the master by the successful bidder in cash, and such further amount of the purchase price was required to be paid in cash as the court might fix and order, upon confirmation of the sale. The purchaser was permitted to pay the balance of the purchase price by taking up receivers' certificates, paying and discharging certain specified claims of a preferential character, and presenting and surrendering to the master trust certificates and interest warrants secured by the mortgages for indorsement of credits for the amount of their respective shares of the purchase money. By the decree the purchaser and his assigns were required to enter their appearance in the case, and subject themselves to the jurisdiction of the court with respect to any and all claims then pending or thereafter to be presented for which a priority over the mortgage debts was claimed; and the purchaser or purchasers, as a part of the consideration for the purchase, in addition to the payments in cash of the amounts which might be ordered by the court, were required to take the property upon the express condition that he or they should pay off and discharge, among other debts, "all debts and liabilities which the receivers have incurred or may incur in operating the road, including claims for personal injuries." After confirmation of the sale the master and receivers were ordered to execute and deliver to the purchaser good and sufficient deeds of conveyance to any and all property of said railway company vested or standing in the name of said receivers; and it was ordered, as a result of all such proceedings, in the language of the decree, that "the said purchaser or purchasers shall have and be entitled to hold said property free and discharged from the lien or incumbrance of the several mortgages hereinbefore referred to, and free and discharged from the claims of all parties to this suit, whether such persons are parties hereto by representation or otherwise." In due course of procedure after entry of the decree the railroad and property were sold to Louis Fitzgerald, who was the highest bidder therefor. Afterwards he and the St. Louis Southwestern Railway Company, a new corporation organized for the purpose of purchasing and operating said railroad, and to which all the property so purchased by Fitzgerald had been transferred, duly entered their appearance in the principal case, and became parties thereto, and subject to each and all the terms, conditions, and orders already adverted to. After coming in of the master's report, the court on January 20, 1891, pursuant to the power reserved in the decree, made the following order of confirmation: "The master's report of the sale in this case having been hereto-

fore filed, and the court having considered the same, it is ordered that upon the payment into the registry of this court of the sum of $40,000, to be applied in payment of that amount of the debts and claims allowed and that may be allowed against the receivership in this district, and of the debts and claims against the railroad company allowed or that may be allowed and ordered to be paid out of the proceeds of the sale of said road, the said sale shall stand approved and confirmed, and not otherwise; and the receivers shall not part with the possession of said property in this district until said sum is paid into the registry of this court. The payment of said sum shall not affect the liability of the road or the purchaser for any other or greater sum or sums for which the said receivership or railroad may be liable under the orders of this court, or the decree for the sale of said road. On compliance with this order the master may execute a deed to the purchaser for said property, which, upon being approved by the circuit court of the United States for the Eastern district of Missouri, will be approved by this court." Afterwards, and on January 28, 1891, the court modified the order of January 20, 1891, by changing the sum of $40,000 required to be paid into the registry of the court to $30,000; and after reciting that the same had been paid into the registry of the court in accordance with and for the purposes mentioned in the order of January 20, 1891, as so amended, the sale was confirmed, and deeds were ordered to be executed and delivered to the purchaser.

Prior to 1890, Daniel C. Jackson, the appellee, claimed to have been injured by the negligence of the agents and servants of the receivers in the operation of one of their trains of cars, and afterwards, on the 21st day of April, 1890, instituted a suit in the state court of Arkansas against the receivers for the recovery of damages for his injuries. His suit was pending in the state courts, during all the time occupied in taking the foregoing proceedings in the principal case. On December 31, 1892, the appellee, having before that time secured a final judgment in his favor in the state court, filed his intervening petition in the principal case. In it he recited the facts constituting his cause of action against the receivers, the institution of his suit in the state court, and the recovery of a final judgment against the receivers for $5,000. He then averred that by virtue of the laws of the state of Arkansas, and the orders of the court in the principal case already referred to, his judgment constituted a lien upon the railroad and other property in the possession of the receivers, superior to that of the mortgage security holders. He alleged further that the property had been sold to Fitzgerald, and subsequently transferred to the St. Louis Southwestern Railway Company, which was then operating the same, and that said last-named parties were, under the several orders of court already referred to, under obligation to pay his claim; that a sum of money had been deposited in the registry of the court, by order of the court, for the purpose, among other things, as is alleged in said intervening petition, of paying off "such debts and liabilities incurred by the receivers in operating said road, including claims for injuries to persons and property, as this honorable court may determine and declare to be liens upon the property of said railway company, paramount and superior to the liens of the mortgages sued on herein, and which this court may from time to time order to be paid out of the said sum of money." On March 17, 1893, Louis Fitzgerald and the St. Louis Southwestern Railway Company appeared and filed their joint response to the intervening petition of Jackson; first denying that his judgment was a superior lien to that of the bondholders, and afterwards alleging affirmatively as follows: "That said Louis Fitzgerald, in accordance with the order of this court, had deposited in the registry of this court a large sum of money for the purpose of paying off and discharging such claims and liens as are of superior right to the rights acquired by him under his purchase of said property as aforesaid; that the balance remaining of said fund after paying off such superior liens would revert to him or the St. Louis Southwestern Railway Company; that when said fund is exhausted the property of said railroad, now the property of the respondent St. Louis Southwestern Railway Company, will, pursuant to the decree of this court, be subject to the demands of such claims as shall be adjudged by this court to be a proper charge thereon. Wherefore the respondents say that said Dan. C. Jackson's right to have his claim paid out of the said fund now in the registry of this court is not such a claim as is

recognized and adjudged proper to be paid out of said fund, but is inferior in point of right to the claims of these respondents upon such fund." The issues so made were submitted to the court, and on April 18, 1893, the court, after reciting the facts showing Jackson's claim against the railroad, and finding that there was then due to Jackson the sum of $5,848.83, made the following further findings and order; that is to say: "That the said sum so due to the said intervener on said judgment is one of the debts and liabilities which by the order of this court made and entered on the 31st day of January, 1890, was made a lien on the mortgaged premises described in the bill in said original cause, superior and paramount to the lien of the mortgage mentioned in said bill, and is one of the debts and liabilities which the purchaser of said mortgaged premises assumed and became bound to pay under the decree of foreclosure rendered in said cause on the 15th day of July, 1890, and which order was, by special reference thereto, made part of the order confirming said sale, and of the deed executed by the master to said Louis Fitzgerald, purchasing trustee, and by force of the provisions of the order aforesaid said debt is a lien on the said mortgaged premises so purchased by the said Louis Fitzgerald, purchasing trustee, superior and paramount to any lien or right acquired by said Fitzgerald or other person under and by virtue of the purchase of said mortgaged premises at the foreclosure sale aforesaid. And the said Louis Fitzgerald, purchasing trustee as aforesaid, having, on the 28th day of January, 1891, paid into the registry of this court, in pursuance of the orders of this court made on the 20th and 28th days of January, 1891, the sum of $30,000, to pay, in so far as it might, the debts which were liens on the mortgaged premises, and which the purchaser thereof became bound to pay by the terms of the orders aforesaid, it is therefore ordered, considered, and adjudged that the said Daniel C. Jackson, intervener, have and recover of and from the said S. W. Fordyce and A. H. Swanson, as receivers as aforesaid, the said sum of five thousand eight hundred and forty-eight dollars and eighty-three cents ($5,848.83), and interest thereon from this date at the rate of six per centum per annum; that said sum is a lien upon the said mortgaged premises so purchased by the said Louis Fitzgerald, purchasing trustee as aforesaid, and that the same should be paid out of the fund deposited by said purchasing trustee in the registry of this court for the payment of such debts; and said sum of $30,000 so paid into the registry of this court for the purposes aforesaid having been duly deposited in the German National Bank of Little Rock, Arkansas, the designated and appointed depositary of this court, the clerk is directed to draw an order payable to said intervener, or his solicitors of record, on said depositary, for the signature of the judge, for the said sum so allowed said intervener."

Originally, and on January 28, 1891, the fund of $30,000, in question, was deposited in the German National Bank of Little Rock, which was the regular depositary of the court. That bank on July 16, 1891, pursuant to direction of the secretary of the treasury of the United States, transferred the balance of said fund then on hand to the First National Bank of Little Rock, which before then had been designated by the secretary of the treasury as the depositary of the United States at Little Rock. The amount so transferred was $6,122. On February 1, 1893, the First National Bank was found to be insolvent, and its assets were placed in the hands of a receiver. Among its liabilities was the said sum of $6,122. Pursuant to the order of April 28, 1893, a draft was duly drawn upon the German National Bank for the sum of $6,062.32, the amount then due to Jackson, and the same was delivered to the attorneys of Jackson, presented for payment by them, and payment thereof refused by the bank. The facts disclosed by the record show that the appellee has made, and is now making, efforts to secure the payment of his claim from the German National Bank. Since the failure of the First National Bank the clerk of the court has collected as dividends on account of the fund in question sums amounting in the aggregate to $2,142.70, and has paid the same to the appellee, and thereby reduced his claim to the sum of $4,908.50, which, according to the agreed statement of facts, is now due, and bears interest at 6 per cent. from April 8, 1897. If the amount of the fund deposited by appellants in the registry of the court, and afterwards, by order of the secretary of the treasury, transferred to the First National Bank, had not been lost or reduced

by the failure of that bank, it would have been sufficient to pay the appellee's demand in full.

On November 12, 1897, the appellee filed his second intervening petition in the principal case, in which he set forth the facts showing his claim against the receivers; the provisions of the order of January 31, 1890; certain provisions of the decree of foreclosure, and proceedings thereunder; the order made on his first intervening petition, as already set out in full; the drawing of the draft for his claim; the presentation and nonpayment of the same,—and prayed the court to order the St. Louis Southwestern Railway Company, the appellant, to pay the balance due on his claim, namely, $4,908.50, and to make the necessary orders to enforce the payment thereof out of the property now owned and in the possession of said railway company. Fitzgerald and the railway company, who were both made parties to the last-mentioned intervention, duly appeared, and for their response thereto pleaded the several orders and decrees of the court already set out and referred to, the purchase of the property, the payment therefor according to the orders and decree of the court, the deposit of $30,000 in the registry of the court as required by the order of January 28, 1891, and stated that the same was sufficient to pay and satisfy in full the claim of the appellee, and that neither they nor the property purchased by them were any longer liable for the payment of said claim. The appellants also pleaded the acceptance by the appellee of the draft of $6,062.32 drawn upon the German National Bank of Little Rock as satisfaction of his claim. On November 12, 1897, the issues created by said last-mentioned intervening petition and responses thereto came on to be heard upon an agreed statement of facts, embodying those already set forth and referred to; and the court below adjudged and decreed that the claim of the appellee for the balance due him of $4,908.50 is a lien upon the property now in the hands of the appellant railway company, superior and paramount to its right acquired by the purchase thereof, and ordered the appellant railway company to pay the same within 90 days, and that, in case of failure so to do, S. W. Fordyce and A. H. Swanson, as receivers, take possession of the property delivered by them to the purchasing trustee for the purpose of raising a fund, under the orders of the court, to pay appellant's said claim. From this order and decree Louis Fitzgerald and the said railway company have duly prosecuted their appeals to this court.

John M. Taylor (S. H. West and J. G. Taylor, on the brief), for appellant.

Paul Jones (Oscar D. Scott, on the brief), for appellee.

Before SANBORN and THAYER, Circuit Judges, and ADAMS, District Judge.

ADAMS, District Judge, after stating the case as above, delivered the opinion of the court.

It is urged at the outset by counsel for the appellee that this appeal should be dismissed for the reason that S. W. Fordyce and A. H. Swanson did not join in the same. It appears from an inspection of the intervening petition and the responses thereto that neither Fordyce nor Swanson were made parties to the proceeding now under review. No notice was served upon them, and no appearance entered for them. The only ground urged by counsel for treating them as parties to the litigation is that the court below, in its final order appealed from, directed, in case the St. Louis Southwestern Railway Company failed to pay appellee's demand within 90 days, that Fordyce and Swanson, as receivers, should take possession of the railroad for the purpose of raising a fund, under the orders of the court, to satisfy and pay off appellee's claim. The record shows that Fordyce and Swanson were finally discharged as receivers, and

the sureties on their bonds were also released and discharged, by an order made in the principal case as early as October 26, 1893. This was more than four years before the proceeding was instituted in which the order of the court under consideration was made. Not being officers of the court, they were not subject to the jurisdiction of the court over them as such officers in said proceeding; and as they were neither made parties thereto, nor entered their appearance therein, it is not apparent why the court below assumed to exercise jurisdiction over them by embodying in its orders any direction to them. In our opinion, they were not required, under the principles announced in the case of Estis v. Trabue, 128 U. S. 225, 9 Sup. Ct. 58, and cases there cited, to which our attention is directed, to join in the appeal of the railway company, in order to confer jurisdiction upon this court; and the motion to dismiss is without merit.

The assignment of errors and the argument of counsel on the merits of the case present the question whether, according to the true construction of the several orders and decrees of the court made in the principal case, and in the two interventions of the appellee, his claim was, at the date of the order appealed from, a subsisting lien against the property of the appellant railway company, and whether the same ought now to be paid by said railway company. Whether appellee's claim was originally made a lien upon the railway by a state statute or an order of court is immaterial. It must be conceded that it was, by virtue of one or both of these authorities, originally fixed as a lien upon the railroad and its property. But it was a lien upon property in the hands of the court, subject to divers other liens and claims, and necessarily subject to such orders and decrees of the court in the matter of its satisfaction and discharge as, in consideration of the rights and equities of all parties in interest, should seem equitable and just. The comprehensive powers of a court of equity are, without doubt, sufficient to warrant it in discharging a lien once attached to property by the substitution of other property or money in lieu thereof. In fact, it is a common practice in equitable proceedings to order property incumbered by many liens sold free and discharged from all of them, subjecting the proceeds of such sale in money to the same priorities and liens as originally attached to the property itself. Such being the established equitable doctrine, it becomes necessary to inquire whether the court, by the several orders and decrees involved in this case, extinguished the lien of appellee, as originally fixed upon the property itself, by providing other methods for its satisfaction and discharge.

Counsel for appellee claim that by the true construction of the order of January 31, 1890, and the decree of foreclosure, appellee's claim still remains a lien upon the railroad purchased by the appellant; and this was the view of the trial court. While the decree of foreclosure refers to the liens created by the order of January 31, 1890, and continues them in force until paid, it also provides a definite scheme for their payment, namely, by permitting the purchaser to pay the same, together with divers other obligations of

the receivers, as a part of the purchase price for the property acquired. The decree required a certain sum to be paid in cash, and also provided for the payment of such additional sum in cash as the court might order upon confirmation of the sale. After the report of the sale was made by the master appointed for that purpose, the court, by its order of January 20, 1891, as amended by the order of January 28, 1891, with knowledge, as shown by the record, of the existence of pending claims against the receivers, required, as a condition of confirmation of the sale, apparently in view of the right reserved for that purpose in the decree, the payment into the registry of the court of the sum of $30,000 over and above that originally required to be paid; the same to be applied, according to the terms of the order, in payment, among other things, "of the debts and claims allowed and that might be allowed against the receivership." By the terms of the order of confirmation, the possession of the property purchased was not to be delivered to the purchaser until the sum of $30,000 should be paid into the registry of the court for the purposes aforesaid. When that sum was so paid, the purchaser was entitled to a deed, which the master was directed to execute, and also to the possession of the property purchased by him. These orders and this course of procedure were clearly contemplated in and by the provisions of the decree of foreclosure, and were manifestly intended to have the effect upon the title to the property in question as expressed in the twelfth subdivision of the decree, which reads as follows:

"The purchaser or purchasers of the property at the sale herein ordered shall be invested with and shall hold possession and enjoy the property so bought and conveyed to them, * * * and all the rights, privileges, and franchises appertaining thereto, as fully and completely as the St. Louis, Arkansas & Texas Railway Company in Arkansas and Missouri heretofore and now holds and enjoys the same; * * * and the said purchaser or purchasers shall have and be entitled to hold and enjoy said property free and discharged from the lien or incumbrance of the several mortgages hereinbefore referred to, and free and discharged from the claims of all parties to this suit, whether such persons are parties hereto by representation or otherwise."

From all of the provisions of the decree of foreclosure and the orders of the court under consideration, it seems that it was the intention of the court to provide for the deposit of enough money at one time or another, pending the process of transferring possession to the purchaser of the property sold, to pay all probable liens, and for the delivery of the railroad property to the purchaser free from the same. This, in our opinion, is rendered more clear by a clause in the order of January 20, 1891, which, after providing for the payment into the registry of the court of the additional sum of $30,000, to be applied as already stated, reads as follows:

"The payment of said sum shall not affect the liability of the road or the purchaser for any other or greater sum or sums for which the receivership or railroad may be liable under the orders of this court or the decree for the sale of said road."

This clause, by necessary implication, in our opinion, means that, to the extent of such claims as could be paid out of the $30,000 to

be deposited in the registry of the court, the road was relieved of liens, and the purchaser relieved of liability therefor. If, perchance, there might be any claims exceeding said sum of $30,000, the court, by the final clause of the decree of foreclosure, and its order of May 14, 1891, relating to the delivery of the possession of the property to the purchaser, retained jurisdiction over the purchaser and the property purchased, to require a further deposit or other satisfactory provision for their payment.

A consideration of the first intervening petition of the appellee, the responses thereto by Fitzgerald and the railway company, and the order of the court thereon, instead of affording any ground for the contention of the appellee, conduces to the opposite result. The intervener, in his petition, among other things, tenders the issue that there had been deposited in the registry of the court, by order of the court, a sum of money for the purpose of paying off such claims as his. The respondents met this issue, denying intervener's right to have his claim for personal injuries paid out of the fund so deposited, and alleging their superior right to the same. The court, on April 18, 1893, after hearing the issue so presented, made the order of that date, under and by the terms of which it is insisted that the lien of appellee's claim was recognized, and continued against the property itself. In determining the true meaning of this order, it must be considered in the light of the decree of foreclosure, disclosing, as already observed, a manifest purpose to provide a scheme for the payment of lien claims so as to enable the purchaser to receive the property free and discharged from all liens, and also in the light of the order of confirmation of sale, in effect, as already observed, releasing the road and the purchasers thereof from liability for any and all claims within the limit of $30,000 then deposited in the registry of the court, and particularly in the light of the issues tendered on which the order itself was made. So considering this order, we are of the opinion that its true meaning is a declaration that the claim of the intervener is preferential in its character, and falls within the purview of the order of January 31, 1890; that is to say, is superior and paramount in right to any lien acquired by the purchaser, and because of such superiority should be paid out of the fund deposited for the purpose of satisfying such claims. Counsel for appellee insist that because the order contains the words that the claim "is a lien" upon the mortgaged premises superior, etc., such recital is an adjudication that the claim was then a subsisting lien against the property itself, which was binding upon the court below in making the order now under review. In our opinion, this is unsound. Under the issues presented, it was necessary and proper for the court to declare the claim to be a lien within the purview of the order of January 31, 1890, as a preliminary finding in support of the final and effective order for relief, requiring the same to be paid out of the fund of $30,000 set apart for the payment of such claims as should be allowed against the receivership. The bare fact that the court recites that the claim "is a lien" should be read in the light of the issue tendered and the prior orders of the court therein referred to, and, so read, the court

clearly means to declare that the claim was so a lien as to be entitled to be paid out of said fund. When such construction can reasonably be given to the words above quoted, relied upon by counsel for appellee, as is responsive to the issue joined, and in harmony with the prior orders and decrees made in the principal case, the court should adopt that construction, rather than single out these words, and give to them a literal interpretation irresponsive to the issue joined, inconsistent with the order of January 20, 1891, and repugnant to the entire theory of the decree of foreclosure.

That the conclusion already announced is correct also appears from a consideration of the culminating order in the case. The court, after declaring the claim of the appellee to be a lien, noticeably fails to follow such declaration with any order in the nature of a provision for its foreclosure, which alone would be consistent with the theory that the claim was then a subsisting lien against the railroad, but, on the contrary, after declaring that it should be paid out of the $30,000 fund referred to in the order as having been "deposited by said purchasing trustee in the registry of the court for the payment of such debts," makes the final and only decretal order to respond accurately to the issues submitted, as follows:

"The clerk is directed to draw an order, payable to said intervener or his solicitor of record, on said depository, for the signature of the judge, for said sum so allowed said intervener."

For the foregoing reasons, it is our opinion that the court, in the exercise of undoubted power, displaced the lien once existing in favor of such claims as that of the appellee against the railroad itself, by requiring the purchaser to deposit a sufficient amount of the purchase money in the registry of the court to fully satisfy the same, and that by so doing the appellee's right was transferred from the property to the money so deposited.

The second intervening petition of Jackson, which resulted in the order now under review, is predicated upon the theory that by reason of the orders and decrees of the court, already sufficiently stated and considered, his claim became, has always remained, and now is, a lien upon the railroad property purchased by the appellants, and that, inasmuch as it has not been paid to him, the relief afforded by the order of the court below in this case is proper. For the reasons already stated, this theory is, in our opinion, unsound. The fund deposited by appellant in the registry of the court took the place, pro tanto, of the railroad. The lien for the payment of such claims as that of the appellee, to the extent of the amount of the fund deposited for their payment, was transferred from the railroad to the fund itself; and the fact that the fund has been lost or placed in jeopardy, without fault of appellants, by orders of the secretary of the treasury transferring it from the depositary designated by the court to a bank which proved to be insolvent, cannot, however unfortunate be the results, afford any grounds for reinstating the lien upon the property purchased and once fully paid for by the appellants, or for requiring the appellants to pay the claim of the appellee a second time.

In the view we have taken of this case, it is not deemed necessary to express any opinion upon the question, argued by counsel, as to whether the receipt by appellee of the draft drawn upon the German National Bank for the payment of his claim is in itself a payment thereof. In our opinion, the proceedings in the case resulting in the deposit of the fund in the registry of the court by the purchaser was in itself a discharge of any obligation resting upon the purchaser or the property purchased, irrespective of any of the facts relating to the steps taken by the appellee to secure his money from the registry of the court.

It results from the views here expressed that the appellee has no ground for equitable relief against the appellant or its property, and that the order of the court below granting to him the relief prayed for was erroneous. The case will be remanded, with directions to the trial court to dismiss the petition.

SANBORN, Circuit Judge (dissenting). I regret that I am unable to concur in a reversal of the order that the lien of the appellee Jackson should be enforced in this case. I cannot do so, because I think that the lien exists, and because I believe that the question of lien or no lien was finally adjudicated between these parties by the decree of April 18, 1893, from which no appeal was taken, and that this adjudication is not reviewable upon this appeal from an order made in 1897 for the mere purpose of executing that decree. It is true that the original decree of foreclosure in the main suit, which was rendered on July 15, 1890, provides that the purchaser or purchasers at the foreclosure sale shall hold the mortgaged property "free and discharged from the claims of all parties to this suit, whether such persons are parties hereto by representation or otherwise"; but that provision, in my opinion, did not relieve the railroad and its appurtenances of the lien of the appellee Jackson, for two reasons: (1) Because it was made on July 15, 1890, and Jackson was not then a party to the suit, by representation or otherwise, and never became such until he filed his first petition of intervention, on November 31, 1892; and (2) because the decree expressly provided in its seventh paragraph that the property purchased at the foreclosure sale should not be released from the liens of debts incurred by the receivers in operating the railroad, but that these debts should constitute paramount liens thereon until the same were paid, and the claim of Jackson was one of these debts. It was not the theory of that decree that the property sold under it should pass to the purchaser free from the liens of the creditors of the receivers and that those creditors should be paid out of the proceeds of the sale, but the plan and the legal effect of the decree were that the purchaser should take the property subject to the liens of these creditors, which should remain securely fastened upon it until they were paid. It was to effectuate this purpose that the decree expressly provided in the eighth paragraph that the court reserved the power and jurisdiction against the purchaser at the sale and his assigns to hear all claims thereafter preferred which were contracted by the receivers, to determine their validity, to decide upon the ex-

istence and rank of their liens, and to retake and sell again the property to be sold under the decree for the purpose of satisfying these claims.

But, to my mind, the conclusive answer to the proposition that the order below should be reversed because Jackson has no lien upon the railroad is that the question of the existence of his lien upon this property is not open for consideration on this appeal, but was conclusively determined by the final decree upon the intervention of Jackson, which was rendered on April 18, 1893. The decree of foreclosure and sale in the original suit was rendered on July 15, 1890; and the order which required the purchaser to pay $30,000 into the registry of the court, and which, it is claimed, devested Jackson's lien from the property and imposed it upon the money, was made on January 28, 1890. On December 31, 1892, Jackson appeared in this case for the first time, and filed an intervening petition, in which he pleaded his judgment against the receivers, and alleged that under the statutes of Arkansas and under the foreclosure decree he had a paramount lien upon the railroad and its appurtenances in the hands of the purchaser at the foreclosure sale, and prayed that this lien might be foreclosed. On March 17, 1893, the purchaser at the foreclosure sale, the appellee Fitzgerald, answered this petition, denied that Jackson had any lien upon the railroad, and pleaded his deposit of the $30,000 in the registry of the court under the order of January 28, 1890. Thus, the question whether or not Jackson had a lien upon the railroad and its appurtenances in the hands of the purchaser was directly in issue upon that intervention. That issue was tried on the merits, and on April 18, 1893, the United States circuit court for the Eastern district of Arkansas entered its decree, which not only recited that Jackson had a lien upon this railroad property, but expressly adjudicated that question, in these words:

"It is therefore ordered, considered, and adjudged that the said Daniel C. Jackson, intervener, have and recover of and from the said S. W. Fordyce and A. H. Swanson, as receivers as aforesaid, the said sum of five thousand eight hundred and forty-eight dollars and eighty-three cents ($5,848.83), and interest thereon from this date at the rate of six per centum per annum, that said sum is a lien upon said mortgaged premises so purchased by the said Louis Fitzgerald, purchasing trustee as aforesaid, and that the same should be paid out of the fund deposited by said purchasing trustee in the registry of this court for the payment of such debts; and said sum of $30,000 so paid into the registry of this court for the purposes aforesaid having been duly deposited in the German National Bank of Little Rock, Arkansas, the designated and appointed depository of this court, the clerk is directed to draw an order, payable to said intervener or his solicitors of record, on said depository, for the signature of the judge, for said sum so allowed said intervener."

This was a final and conclusive adjudication made on April 18, 1893, between the parties to this appeal, or their privies, that the claim of the appellee was then a lien upon the premises which they purchased at the foreclosure sale. They might have had a review of that decision by taking an appeal from that decree to this court, by a motion for a rehearing, or by a bill of review; but no such proceedings were ever had, and the decree stands unimpeached and unchallenged.

A decree is final which terminates the litigation between the parties on the merits of the case, fixes their rights and liabilities, and leaves nothing to be done but to execute it, although the case be referred to a master to state an account, or to determine questions incidental to its execution. Chase v. Driver, 92 Fed. 780, 785; St. Louis, I. M. & S. R. Co. v. Southern Exp. Co., 108 U. S. 24, 29, 2 Sup. Ct. 6; Bank v. Shedd, 121 U. S. 74, 84, 85, 7 Sup. Ct. 807; Hill v. Railroad Co., 140 U. S. 52, 54, 11 Sup. Ct. 690. The only real question on the merits between the parties to this intervention was whether or not Jackson had a lien upon the railroad and its appurtenances in the hands of the purchaser after the foreclosure sale, and the deposit of the $30,000 under the order of January 28, 1890; and when that issue was adjudicated, as it was by the decree of April 18, 1893, their rights and liabilities were fixed, and there was nothing left to be done but to execute the decrees that had been rendered. The decree upon the intervention established the lien, and the foreclosure decree adjudged how it should be enforced if the debt was not paid. namely, by retaking and reselling the railroad property purchased under the foreclosure decree. The decree of April 18, 1893, was not only a judgment that Jackson's lien upon the railroad existed, but it was also an express adjudication that the order for the deposit and the deposit of the $30,000 had not devested it. This is true (1) because the fact that the order and deposit had been made was set forth in the pleadings on which the case was tried and upon which the decree was founded; and because, (2) if this fact had not been pleaded or mentioned, the decree that the lien upon the railroad and appurtenances existed after the order and deposit had been made would have been equally conclusive upon the parties to that decree, and upon their privies, to the effect that it had not been devested from the railroad, or transferred to the $30,000, by the order or by the deposit. In an action between the same parties and those in privity with them upon the same claim or demand, a judgment upon the merits is conclusive, not only as to every matter offered, but as to every admissible matter that might have been offered, to sustain or defeat the claim or demand. Commissioners v. Platt, 49 U. S. App. 216, 223, 25 C. C. A. 87, 91, 79 Fed. 567, 571; Cromwell v. Sac County, 94 U. S. 351, 352; Dickson v. Wilkinson, 3 How. 57, 61; Dimock v. Copper Co., 117 U. S. 559, 565, 6 Sup. Ct. 855; Last Chance Min. Co. v. Tyler Min. Co., 157 U. S. 683, 691, 15 Sup. Ct. 733. The act of congress limited the time within which this adjudication could be reviewed in this court to six months from the date of the entry of the decree, and no appeal was ever taken from it. As it was a final decree, it was not reviewable on an appeal from any subsequent orders or decrees entered for the purpose of enforcing the rights and liabilities which were fixed by it. Rev. St. § 692; 26 Stat. c. 517, § 6; 1 Supp. Rev. St. (2d Ed.) p. 903; Chase v. Driver, 92 Fed. 780, 783; Fourniquet v. Perkins, 16 How. 82, 84. Now, the appeal in this suit is from an order made on November 27, 1897, for the mere purpose of enforcing the lien fixed by the decree of April 18, 1893, and of executing that decree and the original decree of foreclosure, which expressly provided that, if such

liens were not paid, they might be enforced by a reseizure and another sale of the mortgaged property. This appeal was not taken until March 25, 1898, more than four years after the decree which established the lien was rendered, and it does not challenge or mention that adjudication. For these reasons, I am constrained to believe that the question of the existence of Jackson's lien upon the railroad in the hands of these appellees is not here for our consideration; that it was finally adjudicated by the decree of April 18, 1893; and that this court has no jurisdiction to review or reverse that decree on an appeal from a mere order in execution of it made more than four years after its entry.

I attach no importance to the disposition of the $30,000 paid into the registry of the court, or to the futile attempts of Jackson to secure payment of his claim by means of worthless orders upon a fund that was gone. If, as the majority of the court hold, the question of the existence of his lien upon the railroad property is reviewable upon this appeal, and if the order for the deposit and the deposit of the $30,000 devested that lien from this property and transferred it to the lost fund, then the lien upon the railroad does not exist, and the order below should be reversed. If, on the other hand, the question of lien or no lien, which was determined by the decree of April 18, 1893, is not reviewable here in the absence of an appeal from that decree, or if the order for the deposit and the deposit did not devest that lien, then it exists, and it will continue to exist until it is either paid in full, or released by Jackson, or discharged by the decree of a court; and the order below was right. It seems to me that that order should be affirmed.