## CHASE v. DRIVER et al.

### (Circuit Court of Appeals, Eighth Circuit. February 27, 1899.)

### No. 1,083.

**1. Appeal—Final Decree—Decrees Ordering and Confirming Sales of Property.**

A decree which orders a judicial sale of specific property, under which the title may pass beyond the control of the court, is final, and it cannot be reviewed, unless it is challenged by a direct appeal from it, although it contains a provision referring the case to a master to state the account between the parties preparatory to the application of the proceeds and the adjudication of the costs; and an order which absolutely confirms such sale is equally final, and reviewable only by a direct appeal from it.

**2. Same.**

Complainant, who was the owner of the equity of redemption in property which had been sold under deeds of trust, filed a bill alleging the irregularity of such sales, and praying for a resale, that the purchaser be held a mortgagee in possession, that an account be taken of the amount due on the mortgages, and that the surplus proceeds be paid to complainant. He did not offer to redeem, nor question the validity of the mortgage debt. A decree was entered ordering a resale, and referring the case to

a master to state an account between the parties, conditioned on the filing of a bond by complainant for the payment of the costs and expenses in case sufficient was not realized on the sale. Complainant filed the bond, the property was resold, and an order made confirming the sale. Subsequently the master filed his report, which was confirmed, and from such order of confirmation complainant appealed. *Held* that, as the main object of the bill was to procure a resale of the property, the decree ordering the sale, and the order confirming the same, were final, and not interlocutory, and neither could be reviewed on the appeal from the subsequent order, which was taken more than six months after the sale was confirmed.

**3.** EQUITY PRACTICE—SUIT TO OBTAIN RESALE UNDER MORTGAGE — REQUIRING BOND FOR COSTS.

Where the owner of the equity of redemption in property which has been sold under a mortgage files a bill to obtain a resale, without offering to redeem, but merely in the hope that a surplus will be realized from such sale, it is within the power of the court, on ordering such resale, to require the complainant, as a condition, to file a bond for the payment of the costs and expenses of such proceeding in case a sufficient surplus is not realized from the sale.

**4.** APPEAL—ESTOPPEL.

One who accepts the benefits of a decree or judgment is thereby estopped from reviewing it or from escaping from its burdens.

Appeal from the Circuit Court of the United States for the Eastern District of Arkansas.

William M. Randolph (George Randolph, on the brief), for appellant.

Jacob Trieber, for appellees.

Before CALDWELL and SANBORN, Circuit Judges, and ADAMS, District Judge.

SANBORN, Circuit Judge. This is an appeal from a decree made on December 1, 1897, which settled the account between the owner of the equity of redemption in certain lands, and the mortgagee thereof, after the lands had been sold to satisfy the mortgage debt, under a decree rendered in the same case on April 9, 1896, at the suit of the owner of the equity, and after that sale had been confirmed, on December 28, 1896. Ike A. Chase was the complainant in the suit. He was the owner of the equity of redemption in the lands. He has appealed from the decree settling the account; but it was at his suit that the decree of sale was made, and he took no appeal from that decree. He filed no exceptions to the report of sale under it, and he did not appeal from the order of confirmation of that report. Nevertheless, by his assignment of errors on the appeal from the decree of December 1, 1897, filed after that decree was made, he attempts to challenge the provisions of the decree of sale, and of the order confirming the sale under that decree. We are met, therefore, at the threshold of our investigation of this case, with the question whether the decree of sale and order of confirmation were mere interlocutory decrees, and thus reviewable upon an appeal from the decree on the accounting, or were so far final that they could be questioned only by direct appeals from them, taken within six months after their respective entries. 26 Stat. c. 517, § 6; 1 Supp. Rev. St. (2d Ed.) p. 903. A brief statement of the course of the litigation, of the facts which gave rise to it, and of the provi-

sions of these various decrees, is indispensable to a clear understanding of this question.

On December 1, 1888, one Warner owned the land over which this controversy arose, and on that day he conveyed it, by a trust deed, to Abner Driver, to secure a loan of $8,000, which he then made of James D. Driver. After a default had been made in the conditions of the trust deed, Abner Driver, the trustee, sold the land therein to satisfy the debt; and James D. Driver, who will hereafter be called the "mortgagee," purchased it at the sales. These sales were made on December 8, 1891, and on December 10, 1892. Trust deeds evidencing them were made in 1893 and 1894. On November 24, 1891, Warner conveyed his equity of redemption in the lands to the appellant, Chase; and on March 8, 1892, Chase also obtained a sheriff's deed of Warner's interest, upon a sale made under a judgment against him. In December, 1892, the mortgagee took possession of the lands under the trustee's sales. On June 29, 1895, Chase exhibited his bill in this suit. In that bill he set forth the facts we have recited, admitted the original existence of the debt of $8,000 and interest, and conceded the validity of the trust deed made to secure it, but alleged that since November 24, 1891, he had been entitled to the possession of the lands; that the sales and trust deeds were irregular and void; that James D. Driver was only a mortgagee in possession; that proper credits for the amounts which had been, or should have been, paid on the debt ought to be allowed, and a proper account of the rents and profits of the lands ought to be rendered; and that they should be sold again for something near their actual value. He did not offer to pay the mortgage debt, or to redeem the lands from it, but the prayer of his bill was that the trustee's deeds, and the sales upon which they were based, might be set aside; that the trust deed might be reinstated, so far as in equity it ought to be; that an account between Warner and Chase, upon the one side, and the trustee and the mortgagee, upon the other, might be taken; that the true amount owing be found; and that, if it was determined that Warner was justly indebted to the mortgagee in any amount, the lands should be sold again, and the proceeds of the sale applied to the payment of the costs of the suit and of the debt to the mortgagee; and that the balance, if any, be paid to the appellant, Chase. The trustee and mortgagee filed answers, which denied the equities of this bill. Replications followed, testimony was taken in the usual course, and on April 9, 1896, the case came on for final hearing. After that hearing, and on that day, the court rendered a decree that if the appellant would within 10 days give a bond, with proper sureties, in the penal sum of $1,000, conditioned that if, at the proposed sale of the mortgaged premises, there should not be a sufficient sum realized to pay the costs of the sale and of the proposed reference to the master, in addition to the amount that should be found due to the mortgagee, he would pay such costs and expenses, then the trustee's sales and deeds should be set aside, and the land should be sold on May 28, 1896, by a commissioner named in the decree; that, if the appellant did not make and file such a bond within the time fixed, his bill should be dismissed; that, if such bond was filed, John I.

Moore, as special master, should state the account between the parties; that in the statement of this account he should credit the mortgagee with the amount due him on the loan, with interest until December 1, 1896, with all taxes on the land which the mortgagee had paid, and with all money which the mortgagee had expended for permanent, beneficial, and necessary improvements thereon, and should charge him with the amount paid upon the debt of Warner, and with all the rents of the lands which he had collected, or which he should have collected, between January 1, 1893, and December 31, 1896; that the appellant should pay the costs of the sale and reference, if the lands did not realize an amount sufficient to pay the balance found due the mortgagee upon this accounting and these costs; and that the question regarding the costs which had accrued prior to this decree was reserved. The bond was filed. The lands were sold under the decree on May 28, 1896. The commissioner filed his report of sale on September 1, 1896; no exceptions were filed to it; and on December 8, 1896, the court ordered that the sale be confirmed; that the commissioner execute a deed to the purchaser, who was the mortgagee; that the purchase price be credited on the amount due him; and that the appellant pay the commissioner a fee of $100, and the expenses of the sale. At this sale the land brought $10,400. On November 28, 1896, the special master filed his report upon the accounting, by which he found the amount due to the mortgagee, under the decree, to be $11,372.23; so that the land failed to realize an amount sufficient to pay the debt, by $972.23. Chase filed exceptions to the report of the master, by the terms of which he challenged each provision of the decree of April 9, 1896, and of the order of confirmation of December 1, 1896, as well as the findings set down in the report of the master. On December 1, 1897, after a hearing upon these exceptions, the court below entered a decree that they were overruled; that the land did not bring an amount sufficient to pay the amount due to the mortgagee; that the appellees pay all the costs which had accrued in the suit prior to the rendition of the decree of April 9, 1896; that the master be allowed a fee of $250 for his services; that the appellant and the surety on his bond pay the costs which accrued subsequent to the date of the decree of sale; and that the appellees have execution therefor. It is from this last decree, of December 1, 1897, that the appeal before us was taken. When this appeal was allowed, it was many months too late to take an appeal from the decree of sale, or from the order confirming it. So that we cannot consider or review that decree or order, unless they were interlocutory, and thus reviewable by reason of the appeal from the decree for an accounting. Rev. St. § 692; 26 Stat. c. 517, § 6; 1 Supp. Rev. St. (2d Ed.) p. 903; Fourniquet v. Perkins, 16 How. 82, 84.

It is often a vexatious and doubtful question what decrees and decisions are final, and what are interlocutory, within the meaning of these acts of congress. One who carefully examines the decisions of the supreme court upon this question cannot fail to be impressed with the truth of the remark made by Mr. Justice Brown in delivering the opinion of that court in McGourkey v. Railway Co., 146 U.

S. 536, 545, 13 Sup. Ct. 172, when he said, "The cases, it must be conceded, are not altogether harmonious." Many of the decisions of that court are cited, and some of them are reviewed, in that opinion; and, while an examination of them discloses the fact that there are some decrees so close to the line of demarkation that it is difficult to place them, as in Iron Co. v. Meeker, 109 U. S. 183, 3 Sup. Ct. 111, and Beebe v. Russell, 19 How. 283, 286, yet there are many about which there can be little doubt. If the main purpose of the bill is to obtain an account between the parties, and a recovery of the balance that shall be found due, a decree that the complainant is entitled to the accounting, and that the case be referred to a master to state the account, is not final. Latta v. Kilbourn, 150 U. S. 524, 539, 14 Sup. Ct. 201. Decrees which establish the validity of mortgages, and direct the cases to stand over without ordering a sale, are interlocutory. Railway Co. v. Simmons, 123 U. S. 52, 8 Sup. Ct. 58; Parsons v. Robinson, 122 U. S. 112, 7 Sup. Ct. 1153. A decree of foreclosure and sale, which leaves the property to be sold unidentified, and the amount due undetermined, and refers the case to a master to point out the property and to fix the amount, is not a final decree. Railroad Co. v. Swasey, 23 Wall. 405, 410. The decisions of the supreme court in Forgay v. Conrad, 6 How. 204; Thomson v. Dean, 7 Wall. 342, 346; Iron Co. v. Meeker, 109 U. S. 183, 3 Sup. Ct. 111; and Central Trust Co. v. Grant Locomotive Works, 135 U. S. 207, 10 Sup. Ct. 736,—upon the question whether or not a decree which sets aside conveyances, or directs defendants to convey and surrender property, or determines that the complainants are the owners of certain interests in property, and then refers the case to a master to state and report the accounts between the parties to the suit respecting the use of the property,—are difficult to reconcile with its decisions in Perkins v. Fourniquet, 6 How. 206, 208; Craighead v. Wilson, 18 How. 199; Beebe v. Russell, 19 How. 283, 286; and McGourkey v. Railway Co., 146 U. S. 536, 550, 13 Sup. Ct. 170,—upon the same question. But a decree which orders a judicial sale of specific property, under which the title may pass beyond the control of the court, is final; and it cannot be reviewed, unless it is challenged by a direct appeal from it, although it contains a provision referring the case to a master to state the account between the parties preparatory to the application of the proceeds of the sale, and to the adjudication of the costs. Ray v. Law, 3 Cranch, 179; Whiting v. Bank, 13 Pet. 6; Bronson v. Railroad Co., 2 Black, 524; Michoud v. Girod, 4 How. 502; Sage v. Railroad Co., 96 U. S. 712, 714; Bank v. Shedd, 121 U. S. 74, 84, 85, 7 Sup. Ct. 807. And an order which absolutely confirms a sale under such a decree is equally final, and subject to review by a direct appeal from it. Sage v. Railroad Co., 96 U. S. 712, 714; Blossom v. Railroad Co., 1 Wall. 655; Butterfield v. Usher, 91 U. S. 246.

The rule announced by the decisions last cited is so indispensable to the protection of the rights of litigants, and of the purchasers at judicial sales, and to a wise and just administration of the law, that it ought not to be questioned. If decrees of sale and orders of confirmation were subject to review until the last decrees upon all the

accountings were entered, the uncertainty of the title to be obtained at the sales would deter parties from buying, so that fair prices could not be obtained until the final reports upon the last accounts were confirmed; and the courts would be compelled to sacrifice the property, or to withhold the decrees of sale until all the questions presented at the accountings were determined. The latter course would be impracticable and intolerable. It is often of paramount importance to the litigants that the property in controversy be converted into money, and that a perfect title to it be conveyed, years before the necessary accounting between the contestants is completed. This is almost invariably the case in the foreclosure of a mortgage upon a great railroad, and in the disposition of valuable property involved in litigation among numerous claimants. In Bank v. Shedd, 121 U. S. 74, 84, 85, 7 Sup. Ct. 807, the trustees under two mortgages, and some of the bondholders secured by one of them, were contesting the priority of their respective liens, and the amounts due on the mortgages were undetermined. The court entered a decree of foreclosure and sale, in which it reserved for future disposition all disputes and controversies between the trustees in the two mortgages and the bondholders as to the priority and amounts of their respective liens; and the supreme court held this to be a final decree. In view of this rule, and the authorities to which we have adverted, there seems to be little doubt as to the finality of the decree of April 9, 1896, and of the order of confirmation of December 1st in that year, in the case at bar. If the first decree had merely set aside the trust deeds, and referred the disputes to a master to state the accounts, it might have been merely interlocutory; but, when it went further,—directed a sale of the land on May 28, 1896, fixed the liabilities of the parties on the accounting, and referred the case to the master to state the account, in accordance with the decision, in case the bond should be filed, and dismissed the bill if it should not be filed within 10 days,—it fell under the unbroken line of decisions, and within the reason of the rule, that a decree of sale of specific property in a case in which such a sale is the main purpose of the suit is final, and reviewable only by an appeal which directly challenges it within the time fixed by the statute.

There are other considerations which lead to the same conclusion. A decree is final which terminates the litigation between the parties on the merits of the case, fixes their rights and liabilities, and leaves nothing to be done but to execute it, although the case may be referred to a master to state an account, or to determine questions incidental to its execution. St. Louis, I. M. & S. Ry. Co. v. Southern Exp. Co., 108 U. S. 24, 29, 2 Sup. Ct. 6; Bank v. Shedd, 121 U. S. 74, 84, 85, 7 Sup. Ct. 807; Hill v. Railroad Co., 140 U. S. 52, 54, 11 Sup. Ct. 690. This was a speculative bill, and the relief it prayed was that the court would try an experiment. The complainant admitted that the mortgagee was in possession of the property, and that the debt due him was just and unpaid. On well-settled principles, he had no right to the possession of the property until he redeemed it from the mortgage by paying the debt upon it. Brobst

v. Brock, 10 Wall. 519; Bryan v. Kales, 162 U. S. 411, 16 Sup. Ct. 802; Bryan v. Brasius, 162 U. S. 416, 16 Sup. Ct. 803. He made no offer to do this, but prayed that the court would set aside the trustee's deeds, and order another sale, to see if the property would not bring enough to pay the debt and give him a surplus. The pleadings raised no question concerning the basis of the accounting. The sole issue they presented was whether or not the deeds should be set aside, and the experiment of another sale should be tried. This issue was determined, a sale was ordered, .and the basis of the accounting was fixed by the decree of April 9, 1896. It is true that the court did not determine the amount due on the debt before the sale, but it is also true that there was no occasion to determine it at that time. The mortgagee was not seeking the collection of his debt, or a sale to satisfy it. The owner of the equity of redemption was not seeking to pay it, or offering to redeem the lands from it. He sought the sale, and he sought it for the sole purpose of obtaining the surplus above the debt which he hoped the property might yield. The determination of the amount of the debt was only important to determine the amount of the surplus or of the deficiency; and that could not be determined until after the sale was made and confirmed, and the amount realized from it was found. The accounting referred to the master, therefore, was, in effect, the usual accounting, after a decree of foreclosure and sale, to determine the deficiency, if any; and it is common knowledge that a decree of sale is not reviewable upon an appeal from the subsequent judgment for a deficiency. This accounting was merely incidental to the decision upon the merits, and necessary to the execution of the decree. The decree of sale determined every issue raised by the pleadings, and granted the relief prayed by the bill. Moreover, this decree of April 9, 1896, was obtained, not at the suit of the appellees, but at that of the appellant. He it was who prayed for the decree, and who, when it was made, put it into execution. It was at his request, and for his benefit, against the protest of the appellees, that the decree and the sale were made. When the decree was entered, he had the option to refrain from filing his bond, and to appeal to this court for its reversal or modification, or to file his bond and accept the terms of the decree. He chose the latter alternative. He took the benefit of the sale offered him under the decree which he had sought, and it is too late for him now to escape from the terms prescribed or the burdens imposed thereby. One who accepts the benefits of a decree or judgment is thereby estopped from reviewing it, or from escaping from its burdens. Albright v. Oyster, 60 Fed. 644, 9 C. C. A. 173, 19 U. S. App. 651. "Parties to suits must act consistently. They will not be heard to complain of errors which they have themselves committed, or have induced the trial court to commit. Long v. Fox, 100 Ill. 43, 50; Nitche v. Earle, 117 Ind. 270, 275, 19 N. E. 749; Dunning v. West, 66 Ill. 366, 367; Noble v. Blount, 77 Mo. 235; Holmes v. Braidwood, 82 Mo. 610, 617; Price v. Town of Breckenridge, 92 Mo. 378, 387, 5 S. W. 20; Fairbanks v. Long, 91 Mo. 628, 633, 4 S. W. 499." Walton v. Railway Co., 56 Fed. 1006, 6 C. C. A. 223, and 12 U. S. App. 511, 513.

Our conclusion is that the decree of April 9, 1896, and the order of confirmation of December 1, 1896, were final decrees, and that they cannot be reviewed upon an appeal from the subsequent decree confirming the master's report upon the accounting, and adjudging the costs, because they direct and confirm a judicial sale of specific property upon a bill, the main purpose of which was to obtain such a sale, because the decree of April 9, 1896, terminated the litigation of the issues presented by the pleadings upon the merits, and referred nothing but the accounting to determine the surplus or deficiency resulting from the sale, which was merely incidental to the execution of the decree, and because the appellant procured, enforced, and took the benefit of, that decree, and is thereby estopped from challenging it. The result is that we are precluded from considering the errors assigned in the decree of sale and in the order of confirmation, and we proceed to a consideration of those alleged to exist in the decree upon the accounting.

It is contended that the mortgagee committed waste while he was in the possession of the property, and that some amount should have been charged against him on this account. There is testimony that some wood and timber were cut from the land, and that some dilapidated and uninhabitable cabins rotted down, burned, or were removed during the years 1893, 1894, 1895, and 1896; but the record contains no evidence sufficient to warrant a conclusion that the mortgagee or his tenants were guilty of committing waste. No more wood or timber seems to have been used than was necessary to construct and repair the necessary buildings, build fences, and furnish the firewood for the tenants upon the lands. The cabins which disappeared were not of sufficient value to warrant their preservation or repair.

When the mortgagee took possession of the land he leased it to one McGavock for a term of five years from January 1, 1893, for $600 per annum, and on McGavock's covenant that he would put a substantial fence around the plantation, and that he would repair four old houses, and erect five new houses, on the premises. The mortgagee agreed to furnish the flooring for these houses. The evidence is that he did buy and furnish lumber for this purpose, at an expense of $40. In the accounting the master charged the mortgagee with the rent collected under this lease, and credited him with this $40. The decree of April 9, 1896, directed the master to charge the mortgagee with all the rents which he had collected, or should have collected, from, and to credit him with all money which he had expended for permanent, beneficial, and necessary improvements upon, the property prior to October 31, 1896. The master found that improvements of the value of $2,500 had been made by McGavock under his lease, but that the mortgagee had expended only the $40 which he paid for the lumber. He therefore declined to credit him with more than $40 on account of the improvements, or to charge him with more than $600 per annum on account of the rents. It is contended that the land could have been leased for $1,250 per annum, and that the mortgagee should have been charged with $6,250, instead of $2,400, on account of these rents, and that he should not

have received credit for the $40 he paid for the lumber. The credit of the $40 was so clearly within the express terms of the decree that the objection to it is not worthy of consideration. The testimony upon the question of the rents the mortgagee could have collected from the land is voluminous and conflicting. Twenty witnesses testified upon this subject, and, as is usual in such cases, their estimates of the fair rental value of the property exhibited much variance. The mortgaged premises consisted of 400 acres of land. At the time the lease was made, 275 acres were cleared, and during the term of the lease McGavock cleared about 80 acres more. There was testimony that the use of some of this cleared land, when leased in tracts of from 5 to 40 acres, was worth $5 per acre per annum, and that the mortgagee should have obtained at least $4 per acre in each year for all the cleared land. On the other hand, several witnesses testified that the annual rental value of small tracts of farm land was from $1 to $2 per acre higher than that of farms comprising 200 or 300 acres, and that $600 per annum, on the terms of the lease to McGavock, was a fair rental for these lands. When the lease was made, the fences and buildings were poor, and the improvements required by the lease were necessary to the rental or use of the property. Upon a consideration of all the testimony in the light of this fact, we have been forced to the conclusion that its preponderance is in favor of the finding of the master that Driver obtained all the rents the property was worth by his lease to McGavock. If this preponderance was doubtful, the lease itself, and the fact that the mortgagee made it in his own interest and for his own benefit, without fraud or fault, when he undoubtedly believed that he was the owner of the property, would be sufficient to turn the scales. There was no error, therefore, in the refusal of the master to charge the mortgagee with more than he actually collected on account of the rents of the mortgaged premises.

It is assigned as error that the fee of $250 allowed the master who examined the case and stated the account was excessive, but a careful reading and consideration of the evidence and arguments of counsel upon the questions which were presented to him in the first instance have convinced us that this assignment is without merit.

Finally, it is insisted that the costs of the sale and of the reference should not have been charged against the appellant, and that the decree that he and his surety on the bond shall pay them is erroneous. In support of this contention, it is urged that the court had no authority to require the bond as a condition for its decree, and that it is for that reason without force or effect. It was, however, the decree of April 9, 1896, which adjudged that the appellant should pay these costs; and the propriety of that adjudication is not here for review, for the reasons stated in the earlier part of this opinion. Whether or not the court below had the lawful authority to require the bond for these costs to be given is not now material, because, under the earlier decree, the appellant was required, and is bound, to pay them, regardless of the bond; and his surety, who is the only party upon whom an additional burden is laid by the decree of December 1, 1897, has neither appealed nor complained. For

these reasons, we shall not here enter upon a discussion of the authority of a court of equity to impose upon one who prays its aid such just and reasonable conditions as will require him who seeks equity to do equity. We cannot forbear to add, however, lest our silence should appear to indicate doubt, that in our opinion its jurisdiction and power to impose such conditions cannot be successfully questioned, and that, if the court below made any mistake in this case, it was not that it required the appellant to give bond to secure the costs of his experiment, but that it did not require him to secure the payment of the entire debt of the mortgagee, as well as the costs, before it exercised its power to direct the sale. The decree below is affirmed, with costs.