DENISON & N. RY. CO. v. RANNEY-ALTON MERCANTILE CO. et al.

(Circuit Court of Appeals, Eighth Circuit. October 24, 1900.)

No. 1,401.

1. CONTRACT OF CORPORATION—DEFAULTING CONTRACTORS—LIABILITIES.

A corporation is not legally or equitably bound to pay the creditors of its defaulting contractors for work, materials, or supplies which creditors furnished to such contractors, and the latter used to improve the property of the corporation, when the contractors have so utterly failed to perform their agreement with the corporation that it owes them nothing.

2. SAME—EQUITABLE LIEN.

In the absence of a statute creating them, such creditors of defaulting contractors have no equitable liens upon the property of such a corporation.

3. SAME—LIABILITY TO CREDITORS OF DEFAULTING CONTRACTORS.

A corporation is not legally or equitably bound to pay the creditors of defaulting contractors with a receiver of its property for work, materials, or supplies which such creditors furnished to such contractors, and which the latter used to improve the property of the corporation, when the contractors have so utterly failed to perform their agreement that the receiver owes them nothing.

4. SAME—EQUITABLE LIEN ON PROPERTY IN HANDS OF RECEIVER.

In the absence of a statute, or an order of court, made before such work, materials, or supplies were furnished, establishing them, such creditors have no equitable liens for the amounts due them from the defaulting contractors upon the property of the corporation in the hands of the receiver.

5. RAILROADS—RECEIVERS—CONTRACTS FOR CONSTRUCTION—LIENS.

Orders of court authorizing the receiver of the property of a railroad corporation to make an agreement with specified contractors for the construction, completion, and equipment of a railroad in consideration of receiver's certificates to the amount of $11,000 for every mile of completed and equipped railroad, and making such certificates liens upon the property of the railroad company, give no liens upon such property to the creditors of such contractors for work, materials, or supplies which they furnished to the contractors to enable them to perform their agreement, but conclusively negative the inference that any such liens were created, and demonstrate the fact that the court contemplated and intended that the contractors should pay their own creditors, that the amount which became due from the receiver to the contractors under the agreement should be the limit of the liability of the property of the railway company under the contract, and that this liability should be evidenced by receiver's certificates.

6. APPEAL—FINAL DECREE.

A decree of foreclosure and sale, which leaves the amount of the claims of the complainants undetermined, and the amount of the liability of the defendants and their property unfixed, is not a final decree.

(Syllabus by the Court.)

Appeal from the United States Court of Appeals in the Indian Territory.

In 1895 the Denison & Northern Railway Company, the appellant, was a corporation authorized to construct railroads in the Indian Territory. The United States court in that territory for the Southern division appointed a receiver of its property, and authorized that receiver to issue certificates of indebtedness, and to make a contract with the Mineral Belt Construction Company, a co-partnership, for the construction and equipment of 104 miles of railroad in consideration that the receiver would pay to these contractors receiver's certificates to the amount of $11,000 per mile of completed and equipped railroad. These contractors employed men, bought supplies and materials, and caused some grading to be done, but never completed or equipped a mile of railroad, or complied with any condition of their contract. The Ranney-Alton Mercantile Company, a corporation, sold groceries of the value of $16,500 to these contractors, for which they did not pay, and thereupon it filed a bill against the construction company and the railway company, and prayed that the amount of its claim against the construction company should be decreed to constitute a lien upon all the property of the railway company, and that this property should be sold to pay this claim. Other creditors of the defaulting contractors brought like suits, which were consolidated with that of the mercantile company, and upon final hearing the court decreed that all these creditors were entitled to liens upon the property of the railway company to the amount of the value of the improvements which the contractors had made upon the line of the railroad. This decree was affirmed by the United States court of appeals in the Indian Territory (53 S. W. 496), and the railway company appeals from that decree of affirmance.

William J. Scott and W. B. Sanders (Henry M. Furman, C. S. Herbert, C. B. Stuart, Yancey Lewis, J. H. Gordon, Andrew Squire, and J. H. Dempsey, on the brief), for appellant.

W. A. Ledbetter and S. T. Bledsoe, for appellees.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

This was a suit in equity, and the appeal presented to this court all the evidence, and imposed upon it the duty of finding the facts proved, of considering the entire case upon its merits, and of deciding it according to the law and the very right of the matter. The only difficulty which it has presented has been to extract from a confused mass of relevant and irrelevant evidence in a printed record of 529 pages and from 306 printed pages of argument the few material facts and elementary principles of law which condition its disposition. When these had been discovered, the questions presented in argument had been answered by these axiomatic rules of law and of reason: A corporation is not legally or equitably bound to pay the creditors of its defaulting contractors for work, materials, or supplies which creditors furnished to such contractors, and the latter used to improve the property of the corporation, when the contractors have so utterly failed to perform their agreement with the corporation that it owes them nothing. In the absence of a statute creating them, such creditors of defaulting contractors have no equitable liens upon the property of such a corporation. A corporation is not legally or equitably bound to pay the creditors of defaulting contractors with a receiver of its property for work, materials, or supplies which such creditors furnished to such contractors, and which the latter used to improve the property of the corporation,

when the contractors have so utterly failed to perform their agreement that the receiver owes them nothing. In the absence of a statute, or an order of court, made before such work, materials, or supplies were furnished, establishing them, such creditors have no equitable liens for the amounts due them from the defaulting contractors upon the property of the corporation in the hands of the receiver. Orders of court authorizing the receiver of the property of a railroad corporation to make an agreement with specified contractors for the construction, completion, and equipment of a railroad in consideration of receiver's certificates to the amount of $11,000 for every mile of completed and equipped railroad, and making such certificates liens upon the property of the railroad company, give no liens upon such property to the creditors of such contractors for work, materials, or supplies which they furnished to the contractors to enable them to perform their agreement, but conclusively negative the inference that any such liens were created, and demonstrate the fact that the court contemplated and intended that the contractors should pay their own creditors, that the amount which became due from the receiver to the contractors under the agreement should be the limit of the liability of the property of the railway company under the contract, and that this liability should be evidenced by receiver's certificates.

The facts established by the evidence which are material to a decision of the merits of this suit are few and simple. They are these: A receiver of the property of the appellant, the railway company, was ordered by the court to make, and did make, a contract with a co-partnership that they should construct and equip 104 miles of railroad in consideration of receiver's certificates to the amount of $11,000 for each mile of completed and equipped railroad. After these orders had been made, the appellee, the mercantile company, sold to these contractors groceries worth $16,500, in reliance upon them. The contractors employed some men, and caused some grading and bridging to be done on the line of the railroad, but utterly failed to complete or equip any part of it, or to comply with any stipulation of their contract. The mercantile company filed a bill to establish and enforce a lien upon the property of the railway company for the amount which the defaulting contractors owed them. In their bill they alleged other facts, which they failed to prove, and others still the proof of which was immaterial. The record is full of demurrers, pleas, objections, reports of masters, rulings, and exceptions. It bristles with amusing facts and interesting legal conundrums, but, when all is said, the few plain facts which have been recited and the elementary principles already announced dispose of the entire case upon its merits, and render it impossible to sustain any lien upon the property of this railway company for the debts of the defaulting contractors of its receiver, either at law or in equity. The rules which render this result imperative are proverbial. They warrant neither discussion nor citation of authority. The facts are so simple that no argument can strengthen the conviction which their statement carries. This decision of the case upon its merits renders the discussion of other questions in the suit

unnecessary, and we might well leave the case here were it not for the fact that counsel for the appellees have so earnestly contended that other material facts were proved, and other principles of law were applicable, that we hesitate to close our opinion without a brief statement of the reasons which have led us to the conclusion that their positions cannot be sustained. To this end the facts out of which this suit arose will be stated more at length, and then the claims of counsel for the appellees will be considered.

In 1895 the Denison & Northern Railway Company was a corporation with a charter, and nothing else. On April 18, 1895, it made a contract with a co-partnership styled Bracey, Lampson & Chapman for the construction of 71 miles of railroad in the Indian Territory. These contractors caused some surveys to be made, and some work to be done clearing the right of way for the railroad. But they utterly failed to comply with the terms of their contract, and there is no proof that the railway company ever became indebted to them in any amount whatever. On September 7, 1895, W. S. Crockett, one of the creditors of Bracey, Lampson & Chapman, filed a bill in the United States court in the Indian Territory on behalf of himself and other creditors of these defaulting contractors against the railway company, and prayed for the appointment of a receiver of its property, and for its sale. This bill stated no cause of action in equity, and no ground for the appointment of a receiver, and on March 14, 1898, after a receiver had been appointed, had been authorized to issue certificates of indebtedness, and to make a contract to construct 104 miles of railroad, and after the property of the company had been held in the clutches of the court for more than two years, that court dismissed the entire proceeding for want of jurisdiction, discharged the receiver, and vacated and set aside all the orders it had made. On November 5, 1895, that court appointed one Moran Scott a receiver of all the property of the railway company upon the bill in Crockett's suit. The railway company appeared, and submitted to the jurisdiction of the court, and on March 2, 1895, on the application of Crockett, the receiver, and the railway company, the court made orders that the debts of the defaulting contractors, Bracey, Lampson & Chapman, constituted a first lien upon all the property of the railway company; that the receiver should make a contract with the Mineral Belt Construction Company, a co-partnership, for the construction, completion, and equipment of 104 miles of railroad in consideration that they would accept in payment therefor "eleven thousand dollars ($11,000) a mile of receiver's certificates for each mile of road actually constructed and equipped." These orders authorized the receiver to issue $1,140,000 of certificates to pay for the construction and equipment of this railroad. They required the contractors to give a bond in the sum of $100,000 for the faithful performance of the contract. On April 6, 1896, the railway company filed a written motion to set aside the orders authorizing the receiver to issue these certificates and to enter into this contract. This motion called attention to the facts that the bill stated no cause of action in equity; that the complainant was not a creditor of the railway company, but of contractors who had defaulted in the per-

formance of their agreement with the railway company; that the construction company was incapable of performing the proposed contract; that their proposed bond was insufficient; and that the orders to issue the certificates and to make the contract were unwarranted in law and in fact. The complainant, Crockett, made a motion for an order requiring the construction company to strengthen the bond, and prayed that the order directing the receiver to make the contract be rescinded. The court denied these motions, and on April 21, 1896, made an order that the receiver be authorized to issue the certificates; that they should be a lien upon all the property of the railway company; that the receiver should make a contract with the construction company to the effect that they should agree (1) to pay into court on or before June 15, 1897, such sum as should be found due by the master on the claims outstanding against the railway company, (2) to pay all expenses of the receivership, (3) to pay for the right of way of the railway company, and (4) to construct and equip a railroad 104 miles in length on or before January 1, 1897. On April 25, 1896, the Ranney-Alton Mercantile Company made a written contract with the construction company to furnish it groceries, for which the construction company agreed to pay cash within 90 days from delivery, and to give an order on the receiver for receiver's certificates to the amount of the purchases once in 30 days. On the same day the construction company gave to the appellee a bond in the sum of $30,000 for the faithful performance of this contract. Between April 27, 1896, and August 7, 1896, the mercantile company furnished groceries to the construction company, under this contract, to the amount of $16,500. The construction company caused some grading to be done, and some materials to be placed upon the right of way of the railway company, but it failed to completely perform any of the stipulations of its contract. It did not pay the outstanding debts of the railway company. It did not pay the expenses of the receivership. It did not complete and equip a rod of railroad, and there is no allegation or proof that the railway company ever became indebted to it in any amount whatever. On March 14, 1898, the mercantile company commenced this suit by filing a bill in equity against the railway company and the construction company, in which it sought to charge the property of the railway company with a lien for the debt due to it from the construction company. Other creditors of the construction company and creditors of Bracey, Lampson & Chapman brought like suits, which were consolidated with that of the mercantile company, and proceeded to decree. The suit of the mercantile company presents the strongest case upon the record for the complainants, and it will be unnecessary to state or consider the facts in any of the others. This suit was heard on an amended complaint and an answer of the railway company which denied all its averments except those which stated the proceedings in the Crockett case. All the allegations of the amended bill that were material to the right of the mercantile company to a lien upon the property of the railway company were that it sold groceries worth $16,500 to the construction company; that before it made this sale the court had appointed the

receiver of the property of the railway company in the Crockett case, and had authorized him to issue certificates of indebtedness which were to constitute a lien upon the property of the railway company, and to make the contract with the construction company for the construction and equipment of the 104 miles of railroad in the manner already recited; that there was an understanding and agreement at the time these orders were made between the railway company and the construction company that the latter should pledge the certificates to its creditors to procure supplies; that it was agreed and understood between the receiver, the construction company, and the railway company that the construction company should have a lien upon the property of the railway company; that the construction company should pledge its lien to the parties from whom it obtained credit for supplies; that thereby a lien was created in favor of the mercantile company; that the construction company obtained the goods from the mercantile company upon the express representation and agreement that the appellee should have a lien upon the property of the railway company; and that at the time all the orders were made in the Crockett case, and at the time the alleged representations were made to the mercantile company, the railway company was a party to the Crockett case, was aware of the orders, procured them to be made, knew that the construction company was procuring goods on the faith of these orders, that a lien had been created in favor of the mercantile company, and that thereupon the railway company became bound to pay for the goods, and consented and agreed that the mercantile company should have a lien upon its property for their value. There was no averment in the bill that any receiver's certificates were ever issued, assigned to or held by the mercantile company, and no prayer for the enforcement of any lien evidenced by any such certificates. The case went to final hearing upon these pleadings, and on June 2, 1898, the court entered a decree that the mercantile company, and every other creditor of the construction company, and every creditor of the defaulting contractors, Bracey, Lampson & Chapman, who established the indebtedness of either of these contracting firms to him before the master for work or supplies furnished the contractors to enable them to build the railroad, had a lien upon all the property of the railway to the amount of the value of the improvements upon the right of way of the company made by the contractors. After the entry of this decree the case was referred to a master to ascertain the amounts due from the contractors to their respective creditors, and appraisers were appointed by the court to ascertain and report the value of the improvements upon the right of way, and the master and the appraisers in due time made reports, which were confirmed. Thereupon, on October 29, 1898, a decree was rendered that the various creditors of these contractors had liens upon all the property of the railway company for the sum of $41,335, the appraised value of the improvements plus the cost of making the appraisement, in proportion to the sums which the master had found to be due to these creditors, respectively, which amounted in the aggregate to $47,923.67.

It is conceded that the orders of the court to issue the receiver's certificates and to make the contract with the construction company provided that the latter company should completely build and equip the railroad, that all the certificates should be delivered to that company, that those certificates should pay in full for the railroad and equipment, and that they should constitute a lien upon all the property of the railway company. The claim of the mercantile company is that the acts of the parties to the receivership proceeding were such that, in addition to the certificates and the lien which they were to evidence, other liens were created to the amount of the debts of the construction company for groceries, supplies, and materials in favor of the parties who furnished the latter. In other words, the claim is that, if the entire $1,140,000 of certificates had been issued to the construction company, and if the railroad and equipment had thus been fully paid for by the receiver, the property of the railway company would still have been charged with additional liens to secure all the debts of the construction company for supplies, labor, and materials furnished to the contractors. The evidence in this record shows that the value of the improvements made by all the defaulting contractors was about $40,000, that certificates to the amount of $35,000 were issued, and that the unpaid obligations of the construction company which have been charged upon the property of the railway company by this decree aggregate more than $45,000. If the certificates had created a lien, the amount of this lien, added to the liens of the creditors of the defaulting contractors, would have made double the value of the improvements. Under the theory of the counsel for the construction company, if this railroad had been constructed and equipped, it would have been charged with the lien for $1,140,000 evidenced by receiver's certificates, and perhaps for as much more on account of the debts of the contractors for work, materials, and supplies furnished to them in the construction and equipment. This is the absurd theory of the creditors of the contractors. The burden of proof to establish it was upon them. One who employs a contractor to make an improvement upon his property does not ordinarily give to him the full value of the improvement, and also charge his property with all the debts which the contractor may incur in the performance of his agreement. If such a plan was adopted by the railway company, the receiver, or the court, its adoption was unwise, improvident, and contrary to the usual course of business affairs; and its absurdity and improvidence imposed upon those who alleged it the burden of proving it by clear and convincing evidence. Have they successfully borne this burden? A careful analysis of the bill of the mercantile company discloses the suggestion of four, and only four, possible grounds upon which a lien upon the property of the railway company for the debt of the defaulting contractors could be maintained. These grounds are: (1) That, before the mercantile company sold its groceries, the railway company understood and agreed that the creditors of the contractors should have liens upon its property for the work, supplies, and materials which they furnished to the construction company;

(2) that at this time the railway company understood and agreed that the construction company should have a lien upon its property, and that it should pledge this lien to those who furnished the contractors with work, materials, and supplies; (3) that the railway company represented at this time that the creditors of the contractors should have such liens upon its property; and (4) that the orders of the court and the contract it authorized established liens in favor of the creditors of the contractors, and the railway company procured and acquiesced in these orders and this contract. The mercantile company alleged that it relied upon this acquiescence and upon all these agreements, representations, and acts of the railway company when it sold its goods, and that the railway company was estopped thereby from defeating its lien. The sufficiency in law of the averments of this bill which set forth these various grounds of relief was challenged and argued in the courts below and in this court. But the question becomes immaterial, because the allegations of the facts on which the claims of the mercantile company were based were denied in the answer, and they were not proved by the evidence.

1. There is no evidence in this record that either the railway company or the receiver ever at any time either understood or agreed with this mercantile company, or any other creditor of the contractors, that any of these creditors should have any lien whatever upon its property on account of any work, supplies, or materials furnished to the contractors.

2. It is alleged that the railway company understood and agreed that the construction company should have a lien upon its property, and that they should pledge this lien to their creditors. There are two insuperable obstacles to the maintenance of this theory. In the first place, there is no evidence that the railway company or the receiver understood or agreed that the construction company should have any lien upon its property except that which was to be evidenced by the receiver's certificates, and the mercantile company neither alleged any claim nor prayed for any relief on account of any lien based upon these certificates. In the second place, if there had been such an agreement, the mercantile company could have established no lien until it proved that the construction company had acquired such a lien upon the property of the railway company for an indebtedness which the railway company justly owed it, and that this lien had been pledged to the mercantile company. There was no proof that the railway company ever became justly indebted to the construction company, or that it ever acquired any lien upon the property of the railway company. There was no allegation of this essential fact in the bill, no issue joined upon it, and no trial of any such issue. The mercantile company therefore acquired no lien through the assignment of the lien of the contractors, because it was not shown that those contractors ever had such a lien.

3. It was averred that the railway company represented that the creditors of the contractors should have liens upon its property. There is no evidence that either the railway company or the re-

ceiver ever made any such representation. It does appear that the members of the construction company so stated to the agents of the mercantile company, but the representations and agreements of the construction company did not charge the railway company.

4. Finally, it is claimed that the orders of the court, and the contract which it authorized, established liens in favor of the creditors of the contractors, and that, because the railway company procured and acquiesced in these orders, it is estopped from defeating these liens. The fatal objection to this contention is that the orders and the contract not only establish no such liens, but industriously provide against their existence. The theory of those orders and that contract was that the construction company should not only pay all the claims against the prior defaulting contractors, Bracey, Lampson & Chapman, but that they should deliver to the railway company a railroad completed, equipped, free from all liens, charges, and claims, for the $11,000 of receiver's certificates per mile of completed and equipped railroad. The fact that it was the intention and purpose of the court, the receiver, and the railway company to prevent the creation of any lien or charge upon the property of the latter company, except the lien of the receiver's certificates, conclusively appears from the absurdity of any other theory which would necessarily compel the railway company to pay more than once for the improvement; from the fundamental provision of the orders and the contract that the construction company should build and equip the railroad, which could not mean less than that it should pay for the construction and equipment; from the provision that the construction company should pay into court the amount that should be found due from the prior defaulting contractors; from the provision that it should pay all the expenses of the receivership, and should pay for the right of way; and from the provision that the construction company should give a bond conditioned for the faithful performance of its contract. The evident purpose and the clear legal effect of these orders and of this contract were to provide for a completed and equipped railroad of 104 miles in length, free of all liens and claims, except those evidenced by the receiver's certificates to be issued thereunder; and every one who dealt with the construction company in the face of these orders and this contract was compelled to do so with complete notice of these facts and of this law. There was neither agreement, representation, suggestion, nor intimation in any of these legal proceedings that any creditor of the contractors would be permitted to acquire a lien upon the property of the railway company. That theory was negatived by every provision of the orders and of the contract; and, if the railway company had procured and acquiesced in them, it was not thereby estopped to deny the absurd claim of the creditors of these contractors, because it never admitted, represented, or agreed that any such claim would be valid. The result is that the orders in the Crockett case did not contemplate or establish any liens upon the property of the railway company in favor of the claims of the creditors of the contractors of the receiver for supplies, work, or materials furnished to the latter in the construction of the railroad. Those claims were not se-

cured by any statutory or equitable liens, and the decree below must be reversed.

Counsel for the railway company insist that the court had no jurisdiction of the parties to or the subject-matter of the Crockett case, that the orders made and certificates issued in that case were void, and that the proceedings therein gave notice of their invalidity to all who acted on or dealt in them. We have reached a decision of this case in their favor without determining the questions presented by these contentions, and, as it is unnecessary to consider them here, we do not determine in this case either that these contentions are or that they are not well founded.

It is suggested in the brief of counsel for the appellees that, even if the claims of the creditors of the construction company cannot be sustained, yet the railway company is bound by the order of March 2, 1896, which charged its property with liens in favor of the creditors of Bracey, Lampson & Chapman, for the reason that the railway company joined in an application for that order. The argument is unworthy of serious consideration. The creditors of Bracey, Lampson & Chapman were not entitled to any such liens on the merits of their claims, because they were creditors of the defaulting contractors, to whom the railway company was not proved to be indebted. Conceding that the company applied for the order establishing their liens, it was not estopped from vacating that order, because they expended no money, incurred no liability, and sustained no damage on the faith of it. Their claims had arisen months before the order was made. They had arisen before the receiver was appointed. On April 6, 1896, the railway company moved to vacate this order. The order had been erroneously made, and it was finally vacated by the court which made it in the decree which dismissed the Crockett case in 1898. The result is that the creditors of Bracey, Lampson & Chapman are not entitled to any liens either by virtue of the orders in the Crockett case or on account of the merits of their claims.

A single question remains. On June 2, 1898, the trial court entered a decree to the effect that the creditors of the defaulting contractors had a lien upon all the property of the railway company to the amount of the value of the improvements upon the right of way of the company made by the contractors. That decree did not fix the amount of the lien nor the amounts of the claims of the creditors. After it was entered, the amount of the lien was determined by an appraisal of the improvements upon the right of way, made under an order of the court, and the amounts of the claims of the creditors were determined by a master. On October 29, 1898, a decree was rendered that the creditors of the contractors had liens upon the property of the railway company for the sum of $41,355, the appraised value of the improvements plus the cost of making the appraisement, and that they held these liens in proportion to the sums which the master had found to be due to them, respectively, which amounted in the aggregate to $47,923.67. An appeal was taken from the latter decree, but none was taken from the former. Counsel for the appellees seek to escape a reversal of the decrees

of the courts in the Indian Territory on the ground that the decree of June 2, 1898, was the final decree, and that, as no appeal was taken therefrom, the merits of this case were not within the jurisdiction of the United States court of appeals in the Indian Territory, or of this court. But a decree of foreclosure and sale which leaves the amount of the claims of the complainants undetermined and the amount of the liability of the defendants and their property unfixed is not a final decree. Railroad Co. v. Swasey, 23 Wall. 405, 410, 23 L. Ed. 136; Chase v. Driver, 92 Fed. 780, 784, 34 C. C. A. 668, 672. This was the nature of the decree of June 2, 1898. It was an interlocutory decree, which left both the amounts due to the complainants and the amount of the liability of the property of the railway company entirely undetermined. The decree of October 29, 1898, for the first time fixed the limit of the rights of the complainants and of the liabilities of the defendants, and that was the final decree. The appeal from it presented the merits of the entire controversy, and the validity of all the interlocutory orders and decrees in the suit. The decree of the United States court of appeals in the Indian Territory in this case and the decree of the United States court in the Indian Territory are reversed, and the case is remanded, with directions to dismiss the bill upon the merits.