## BOLEN-DARNALL COAL CO. v. HICKS.

(Circuit Court of Appeals, Eighth Circuit. October 17, 1911.)

No. 3,513.

*(Syllabus by the Court.)*

1. APPEAL AND ERROR (§ 695*)—RECORD—QUESTIONS PRESENTED FOR REVIEW—SUFFICIENCY OF EVIDENCE.

It is indispensable to a review of a ruling that there was substantial evidence to sustain a verdict or a finding of fact that the bill of exceptions shall contain all the evidence at the trial, or all the evidence upon the specific issue found.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2911-2915; Dec. Dig. § 695.*]

2. APPEAL AND ERROR (§ 697*)—RECORD—QUESTIONS PRESENTED FOR REVIEW—SUFFICIENCY OF EVIDENCE.

But the omission of evidence which does not appear to have been material from a bill of exceptions which recites that it contains all the evidence and bears the "O. K." of the objecting party, and the signature of the judge, is not fatal to the review. A party may not avail himself of an error he has himself induced the judge who tried the case to commit.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2918-2927; Dec. Dig. § 697.*]

3. EVIDENCE (§ 597*)—MASTER AND SERVANT (§§ 265, 276*)—INJURIES TO SERVANT—WEIGHT OF EVIDENCE.

Conjecture will not sustain a verdict.

The burden is on an employé to prove that his injury was caused by the negligence of his employer which he charges, and where the evidence leaves the matter uncertain, and shows that any one of several causes, for one of which the employer and for some of which the employé might have been responsible, may have produced it, and there is no substantial evidence that the negligence of the employer was the real cause of it, the employé fails in his testimony, and a verdict for him cannot stand. Patton v. Texas & Pacific Ry. Co., 179 U. S. 658, 664, 21 Sup. Ct. 275, 45 L. Ed. 361.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2449; Dec. Dig. § 597;* Master and Servant, Cent. Dig. §§ 877-908; Dec. Dig. §§ 265, 276.*]

4. MASTER AND SERVANT (§ 278*)—INJURIES TO SERVANT—SUFFICIENCY OF EVIDENCE.

The plaintiff charged that he was burned in a mine by an explosion caused by the negligence of a miner in leaving an open keg of powder in an entry from 50 to 75 feet distant from shots the plaintiff fired. The defendant claimed that the explosion and burning were caused either by a windy shot caused by conflicting shots which it was the duty of the plaintiff to inspect before firing and not to fire if they conflicted, or by his firing shots in different rooms at the same time, contrary to a rule of the company. Three witnesses testified that in their opinion the explosion was caused by the conflicting shots which produced a windy shot. Two witnesses testified that it was possible for fire from a properly prepared shot to reach and explode the powder in the keg and one that it might be probable in the particular case, but no witness testified that it was probable, or that in his opinion the explosion was caused by fire from a properly prepared shot reaching the powder in the keg.

*Held,* there was no substantial evidence to sustain a verdict that the explosion was caused by the negligence of the miner who left the keg of powder in the entry.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 278.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Error to the Circuit Court of the United States for the Western District of, Arkansas.

Action by J. B. Hicks against the Bolen-Darnall Coal Company. Judgment for plaintiff, and defendant brings error. Reversed, and new trial ordered.

Vincent M. Miles, for plaintiff in error.

John T. Hunt and James B. McDonough, for defendant in error.

Before SANBORN, Circuit Judge, and MARSHALL, and WILLIAM H. MUNGER, District Judges.

SANBORN, Circuit Judge. This writ of error challenges a judgment in favor of J. B. Hicks, a shot firer, employed by the Bolen-Darnall Coal Company, on account of numerous alleged errors of law, one of which is that the court refused to instruct the jury to return a verdict for the company. The only charge of negligence of the company submitted to the jury was that John Oiler, a miner in the employ of the company whose negligence was imputable to it under the laws of Arkansas where the accident happened, was guilty of negligence which caused the injury of Hicks, in that he left black powder in an open keg in an entry in the mine near to the mouth of one of rooms 8 and 9 in which Hicks fired four shots. The question which conditions the correctness of the ruling submitting this charge to the jury therefore is, Was there any substantial evidence to sustain it?

[1] But counsel for the plaintiff below object to the consideration of this question, and insist upon an affirmance of the judgment because the bill of exceptions does not contain a map of the mine which the court of its own motion refused to admit in evidence, but which was used for illustration in the examination of witnesses, and because the bill, after reciting that the first witness examined by reference to the map was requested to step down and explain it and "did so by saying here and there and his statement would not be intelligible in print," related that another witness who was requested to step down before the jury and explain on the diagram how his shot was placed "did as requested," and "explained to the jury on the map," that a third witness was requested to step down before the jury a minute and show what portion of each shot had not split the coal and had blown out and "did as requested," and that a fourth witness was asked to point out to the jury on the diagram the shot that was in room 8 and "did as requested," and also because the bill contained numerous other references of witnesses to the map and to marks on it which are not more intelligible.

It is a general rule that it is indispensable to a review of a ruling that there was substantial evidence to sustain a verdict or finding of fact that the bill of exceptions shall contain all the evidence in the case or all the evidence on the specific issue of fact found. Lesser Cotton Co. v. St. Louis, I. M. & S. Ry. Co., 52 C. C. A. 95, 105, 114 Fed. 133, 143.

[2] But this bill contains a statement at the close of the evidence that it contains all of it and it bears at the foot of the certificate of the

judge the letters "O. K." and the signature of the leading counsel for the defendant in error. When the bill was presented to counsel for the defendant in error, and then to the judge for his signature, the former had the opportunity to suggest defects and mistakes therein which, if material, the judge would undoubtedly have corrected, and, if he had failed to do so, an exception to that failure would have presented the matter to this court. The fact that counsel then made no suggestion of any defect or omission confirms the impression that no material evidence was omitted which the bill produces. But counsel for the defendant in error went still further. He placed his "O. K." on the bill, and thereby doubtless induced the judge to sign it as it was. If there was material evidence omitted, it was error for the judge to sign this bill with the statement in it that all the evidence appeared therein, counsel for the defendant in error by his "O. K." and signature induced the judge to commit this error, and he ought not now to be permitted to take advantage of it. A party may not avail himself of an error which he has himself induced the judge who tried the case to commit. National Loan & Investment Co. v. Rockland Co., 36 C. C. A. 370, 372, 94 Fed. 335, 337; Walton v. Railway Co., 6 C. C. A. 223, 225, 56 Fed. 1006, 1008; Chase v. Driver, 92 Fed. 780, 34 C. C. A. 668; Long v. Fox, 100 Ill. 43, 50; Nitche v. Earle, 117 Ind. 270, 275, 19 N. E. 749; Dunning v. West, 66 Ill. 366, 367; Noble v. Blount, 77 Mo. 235; Holmes v. Braidwood, 82 Mo. 610, 617; Price v. Town of Breckenridge, 92 Mo. 378, 387, 5 S. W. 20; Fairbanks v. Long, 91 Mo. 628, 633, 4 S. W. 499. Because, if any evidence was omitted from the bill of exceptions, it appears to have been immaterial, and, because counsel for the defendant in error by his "O. K." induced the judge below to certify the bill with the statement therein that it contained all the evidence, the court declines to affirm the judgment on the ground that this statement was erroneous.

[4] We return to the question of the existence of substantial evidence that the injury of Hicks was caused by the location of the open keg of powder. There was indisputable proof that Hicks lighted at the same time four fuses to fire four shots in rooms 8 and 9, that Oiler had left some black powder in the keg in the eleventh south entry outside the rooms, not opposite the mouth of either of the rooms, but a few feet distant from the mouth of one of them and on the opposite side of the entry, which was from 7 to 12 feet wide; that Hicks left his fuses burning, went out to the face of the entry, which was from 150 to 281 feet distant from the mouth of the nearest of these rooms, and while he was there an explosion occurred that seriously burned him. There was not such a quantity of gas in either room as made it dangerous to fire practical shots in those rooms with reasonable care. A practical shot is one the hole for which has been drilled in a direction selected with reasonable care, and that has been filled with powder tamped with the same degree of care. It was the duty of Hicks before firing shots to inspect for gas the rooms in which he fired them, and to refuse to fire them if there was so much gas that it was dangerous to do so. It was his duty, before firing shots, to inspect them to see whether or not they would conflict, and to see if they were prac-

tical shots in other respects, and if they would conflict, or if they were not practical shots in other respects to refuse to fire them. He had been firing shots for 10 months, and was familiar with his duties. The distance of the keg of powder in the entry from the nearest shot to it that he fired was variously stated, but no witness stated it less than 50 feet. At the close of the trial, the real controversy in the case was whether the proximate cause of the injury was the negligence of Oiler in leaving the keg of powder in the entry or (1) the negligence of Hicks in firing four shots at the same time in more than one place in violation of the rules of the company; or (2) his negligence in firing conflicting shots which produced a windy shot. A windy shot is one which is not properly directed or loaded. Such a shot throws fire a much greater distance than a practical shot, sometimes, one of the witnesses testified, 300 feet, and often causes an explosion of the dust or gas in the mine which a practical shot would not disturb. There was much evidence tending to show that two of the shots, one in the rib of room 8 in a break in the partition between the rooms and one in the same partition in room 9, were so directed and drilled that they conflicted, and that this conflict caused a windy shot and the explosion. Four witnesses who qualified themselves to give an opinion upon the subject and who had examined the mine after the accident testified that in their opinion the explosion and the burning of Hicks were caused by a windy shot which resulted from the conflict of the two shots in the partition. The miner who tamped the shot in the partition in room 9 testified that he examined the rooms after the explosion, and that, if his shot was fired first, it might have struck the shot in the rib of 8 between the toe and the heel, and the only evidence to the contrary was that the miner who tamped the shot in the rib in room 8 testified that he did not see how this could happen.

There was evidence that one of six rules of the company posted in public places about the mine was that a shot firer should not fire shots in more than one place at the same time, and that the manager of the mine orally instructed Hicks not to fire shots in more than one place at the same time, but Hicks denied that the manager so instructed him, and, while he admitted that he was aware of three of the six posted rules, denied that he ever heard of this one. He testified, however, that it was dangerous to set off shots in more than one place at a time, but that, if it was done in rotation, it was all right. One witness testified that it was possible for a practical shot to throw fire 75 feet, another that it might be thrown approximately 100 feet, and that it was possible, but not probable, that fire could have been thrown from the shots in room 8 to the keg of powder outside the room, and possible that it might have been so thrown from the shots in No. 9. The witness who put the shot from room 9 into the partition between the rooms testified that it was just a rough guess, that he did not really have much idea, that he judged it was between 50 and 60 or 65 feet maybe from his shot to the keg of powder in the entry, but that he was not positive about that, and then he testified in this way:

"Q. From what you know of the handling of powder and the shooting of shots throwing fire, is it possible or probable that fire ignited this room from

your shot from the switch (where the powder was) that leads into that No. 9 room? A. Well, sir, not certainly, but it is possible for it to be done. Q. Now it is possible, but is it probable? A. It might have been at that particular time."

And this is the strongest evidence, and the foregoing testimony and the fact that the powder was burned as it would have been by a cyclonic explosion from a windy shot is all the evidence that the location of the powder was the proximate cause of the explosion. The plaintiff himself testified that he did not know what the cause of it was, and he did not give any opinion upon that subject. No witness came to say that in his opinion fire from practical shots first ignited this powder in the entry outside the rooms and caused the explosion. None came to say that it was probable that the location of this keg of powder was the proximate cause of the explosion, while, on the other hand, four qualified witnesses testified that in their opinion the proximate cause of it was a windy shot.

[3] The plaintiff below alleged, and the burden of proof was upon him to establish by substantial evidence, that the proximate cause of the accident he sustained was the location of the powder on the opposite side of the entry from the rooms in which he fired the shots. At the close of the trial, there was evidence sufficient to sustain a finding that the accident was caused by his firing of conflicting shots at the same time which produced a windy shot and an explosion, or that it was caused by his firing two shots in each of two rooms in violation of the rule of the company never to fire shots in more than one place at a time, but there was no substantial evidence, there was nothing in this case but conjecture, to sustain a verdict that the explosion was caused by the location of the keg of powder, and juries may not transfer property from one citizen to another by guess. The case falls under the decision of the Supreme Court in Patton v. Texas & Pacific Railway Co., 179 U. S. 658, 663, 21 Sup. Ct. 275, 277 (45 L. Ed. 361), in which Mr. Justice Brewer said that, where an employé charges his employer with causative negligence, "it is not sufficient for the employé to show that the employer may have been guilty of negligence. The evidence must point to the fact that he was. And where the testimony leaves the matter uncertain and shows that one of half a dozen things may have brought about the injury, for some of which the employer is responsible and for some of which he is not, it is not for the jury to guess between these half a dozen causes and find that the negligence of the employer was the real cause, when there is no satisfactory foundation in the testimony for that conclusion. If the employé is unable to adduce sufficient evidence to show negligence on the part of the employer, it is only one of the many cases in which the plaintiff fails in his testimony, and no mere sympathy for the unfortunate victim of an accident justifies any departure from settled rules of proof resting upon all plaintiffs."

Counsel for the defendant in error seek to escape from the conclusion which the facts and law that have been considered compel, on the ground that, even if the cause of the explosion were the windy shot, the cause of that shot was the negligence of the miners who

190 F.—46

drilled and tamped the conflicting shots, and this negligence was imputable to the coal company. But no such charge of negligence was set forth in the pleadings, no such charge was tried below, and there is . no substantial evidence of the negligence of the miners, because there is no substantial evidence that either of them before the explosion knew, or that it was his duty to know, the location, direction, or depth of the hole the other drilled.

The judgment below must be reversed, and the case must be remanded to the court below, with directions to grant a new trial; and it is so ordered.